Commonwealth of Pennsylvania, Acting by Attorney General Israel Packel, Plaintiff, *v.* James Tolleson and Rodney Tolleson, Defendants.

Argued March 4, 1974, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*George S. Test,* Deputy Attorney General, for plaintiff.

*James H. Joseph,* with him *Donald S. Hershman* and *Baskin, Boreman, Wilner, Sachs, Gondelman & Craig,* for defendants.

OPINION BY JUDGE KRAMER, June 19, 1974:

This case comes within the original jurisdiction of this Court. It comes about as a result of the filing of a petition for recovery of civil penalties by the Commonwealth of Pennsylvania (Commonwealth), acting by its Attorney General, against James Tolleson and

Rodney Tolleson (referred to collectively as Tollesons and individually by given and surnames) for violation of a permanent injunction issued under Section 4 of the Unfair Trade Practices and Consumer Protection Law (hereinafter Act), Act of December 17, 1968, P. L. 1224, 73 P.S. §201-4. This opinion is being filed simultaneously with three other opinions involving the Tollesons: *American Be Independent* and *the Tollesons v. the Commonwealth of Pennsylvania* at No. 189 C.D. 1973; *Commonwealth v. the Tollesons,* No. 207 C.D. 1973, involving the injunction requested by the Commonwealth; and *Commonwealth v. the Tollesons,* No. 207 C.D. 1973, involving four petitions for civil penalties filed by the Commonwealth.[1] Because each of these opinions involves a separate subject matter, they are being filed separately for the purpose of clarity.

This case commenced on November 10, 1972 when the Commonwealth filed a complaint in equity seeking to restrain the Tollesons from violating certain provisions of the Act. On this same date, the Commonwealth and the Tollesons filed a Consent Petition for a Permanent Injunction restraining certain activities of the Tollesons in their promotion and sale of regular and executive memberships in an organization known as Century 2000, Inc. The order of this Court and the provisions of the Consent Petition for Permanent Injunction read as follows:

"ORDER

"AND NOW, this 10th day of November, 1972, it is ORDERED AND DECREED by the Court that the Defendants in the above-entitled matter do, and hereby are, PERMANENTLY ENJOINED from engaging in any of the prohibited acts, practices and methods set forth in the

---

[1] There is one other petition for civil penalties at No. 207 C.D. 1973, filed September 7, 1973, which is not made subject of any of these opinions.

within Consent Petition for Permanent Injunction agreed to by counsel and all parties to this action.

"CONSENT PETITION FOR PERMANENT INJUNCTION

"WHEREAS, the Commonwealth of Pennsylvania, by Attorney General J. Shane Creamer, has filed a Complaint in Equity seeking, pursuant to Section 4 of the Act of December 17, 1968, No. 387, 73 P.S. Section 201-1 *et seq.*, entitled the Unfair Trade Practices and Consumer Protection Law, to enjoin Defendants, JAMES TOLLESON and RODNEY TOLLESON, from certain alleged acts or practices declared unfair and deceptive by Section 3 of said Act, and more fully set forth in the Complaint filed herein; and

"WHEREAS, the above-mentioned Defendants are engaged, *inter alia,* in the business of selling memberships in a travel club known as Century 2000 within the Commonwealth of Pennsylvania, as more fully set forth in the Complaint herein, from a principal place of business at 3404 Hamilton Boulevard, Allentown, Pennsylvania; and

"WHEREAS, the above-named Defendants are desirous of complying with the provisions of this Consent Petition for Permanent Injunction contained herein and will require their agents, employees or representatives to do the same:

"Defendants, individually and through all agents, employees or assigns, shall:

"1. Sell 'Executive Memberships' in the Century 2000 Travel Club for five thousand dollars ($5,000.00) only under the following conditions and limitations:

"(a) That a maximum of three hundred (300) of such memberships shall be sold within the Commonwealth; and

"(b) That the Commonwealth will be divided by Defendants into trading areas, whose boundaries shall be mapped out and provided to the Attorney General

within two (2) weeks of the filing of this Petition and accompanying Order, each containing five hundred thousand (500,000) or more individuals, and that a maximum of twenty (20) Executive Memberships shall be sold to individuals living within each of these areas; and

"(c) That each Executive Member will be entitled to sell a maximum of five hundred (500) regular memberships; and

"(d) That each regular membership shall sell for two hundred dollars ($200.00) per family, with one hundred dollars ($100.00) of this amount paid to Century 2000 and the other one hundred dollars ($100.00) held or distributed by the Executive Member selling the regular membership, at his discretion.

"2. In connection with the sale, or attempted sale, of any regular or Executive Memberships, shall not engage in any unfair or deceptive act or practice, including, but not limited to, false or misleading statements concerning:

"(a) The number of aircraft owned or available to Century 2000, or soon to be owned or available to Century 2000;

"(b) The number and destination of trips presently available through the club, or to be available in the near future;

"(c) The cost of trips to be made available by the club;

"(d) The amount of money which an Executive Member can be expected to make or the period of time in which any amount of money can be made;

"(e) The amount of money made by others engaged in selling Century 2000 or any other product or service through similar sales programs.

"3. In connection with the sale or attempted sale of any regular or Executive Membership, shall not engage in any improper or misleading display of wealth

through the wearing of any apparel or jewelry borrowed or on short-term lease, or through the display of automobiles or other items or the display of cash or checks borrowed or on short-term lease.

"4. In connection with the sale or attempted sale of any regular or Executive Memberships, make all affirmative statements necessary to fully apprise the prospective buyer of all of the essential business conditions of Century 2000 and of the program offered, including, but not limited to:

"(a) Details concerning the trading area available to the buyer and the competition to be expected within the area; and

"(b) The history and background of Century 2000.

"5. Provide the Attorney General with an up-to-date list of all Executive Members and their addresses on the first day and the fifteenth day of each month, beginning on December 1, 1972.

"Plaintiff and Defendants agree that either party to this Decree may make application to the Court upon good cause shown for modification of the Decree and the accompanying Order of the Court.

"Now THEREFORE, before any testimony or evidence has been taken herein, and without trial or an adjudication of the facts or law herein, and without the admission by the Defendants that any act heretofore mentioned has been committed, Defendants agree by the signing of this Consent Petition for Permanent Injunction, and the Court hereby orders that Defendants, their agents, employees or representatives shall be permanently enjoined from the breaching of any or all of the aforementioned prohibitions, that this shall serve as notice to them of said injunction, and that the breach of any or all of said injunction shall be sufficient warrant for the Attorney General of Pennsylvania, acting in the name of the Commonwealth, to petition the Commonwealth Court of Pennsylvania to hold Defendant

in contempt and to assess penalties, including recovery of civil penalties as provided for in Section 8 of the Act No. 387, approved December 17, 1968, 73 P.S. §201-1 et seq., the Unfair Trade Practices and Consumer Protection Law, as the Court shall determine.

"Provided, however, that this Consent Petition for Permanent Injunction shall not be construed to waive the Commonwealth's right to pursue such other remedies in the future as it deems appropriate against the Defendant.

"WE HEREBY CONSENT to the foregoing petition to this Honorable Court for the making and entry of a Consent Permanent Injunction, dated this 10th day of November, 1972."

On April 6, 1973, the Commonwealth filed a petition for the recovery of civil penalties for the violation of the above-noted injunction. As a result of a request by the parties involved, this matter was consolidated for hearing with other matters relating to the Tollesons at docket number 207 C.D. 1973. All of the findings of fact and conclusions of law which are pertinent to the disposition of this petition for civil penalties found in the injunction case opinion at 207 C.D. 1973 are made a part hereof by reference thereto. Obviously additional findings and conclusions necessary for the disposition of this case must be made.

### FINDINGS OF FACT

E(1) Within a matter of days following an injunction issued by the Court of Common Pleas of Erie County against Koscot Interplanetary, Inc. (Koscot) and the Tollesons as agents thereof, the Tollesons made arrangements with an organization called Century 2000, a licensed air travel club, to sell memberships in Century 2000.

E(2) At various times, James Tolleson made loans totaling approximately $30,000 to Century 2000, but

did not receive any indicia of ownership of that organization.

E(3) The Tollesons and their agents represented to prospective members in Century 2000 that James Tolleson owned 51% or a controlling interest in Century 2000. In fact, James Tolleson did not own or control Century 2000; he did not own stock in Century 2000.

E(4) On or about November 1, 1972, the Tollesons and their agents commenced the sale of Century 2000 executive memberships in the Commonwealth of Pennsylvania.

E(5) The Tollesons utilized an unregistered corporation called American Opportunities Unlimited, Inc. as a sales organization for their Century 2000 operation. The salesmen initially employed by American Opportunities Unlimited, Inc. were the same salesmen the Tollesons had used to sell Koscot distributorships.

E(6) American Opportunities Unlimited, Inc. was a subsidiary of Empire Enterprises, Inc. which was owned entirely by James Tolleson.

E(7) American Opportunities Unlimited, Inc. was used as the brokerage firm. All of the monies paid by individuals who joined Century 2000 through the Tollesons, was paid to American Opportunities Unlimited, Inc.

E(8) The Tollesons and their agents advised some prospective executive members in Century 2000 to obtain and utilize mailing addresses in trading areas outside the areas where they actually resided. Through the use of false addresses, the Tollesons could sell more than twenty executive memberships in certain trading areas.

E(9) The Tollesons and their agents advised prospective Pennsylvania members that Century 2000 owned more than two aircraft but Century 2000 in fact never owned more than two aircraft.

E(10) The Tollesons and their agents made false statements to prospective purchasers concerning the amount of monies earned by Tolleson agents selling Century 2000 memberships.

E(11) The Tollesons and their agents engaged in improper and misleading displays of wealth in order to induce prospects to invest in Century 2000.

E(12) The Tollesons and their agents sold what were purported to be lifetime memberships in Century 2000, but failed to disclose the additional costs and renewal fees involved in the memberships.

E(13) The Tollesons and their agents did not provide the Attorney General with a current list of executive members and their addresses on the 1st and 15th of each month, commencing December 1, 1972.

E(14) All of the officials, officers, directors and sales personnel of the unregistered corporations and fictitious names controlled by the Tollesons, including by way of description and not by way of limitation, state developers, executive members and membership recruiters, were agents of the Tollesons.

E(15) Agents of the Tollesons denied, pursuant to questions put by prospective members in Century 2000, that James Tolleson had ever been connected with Glenn W. Turner when in fact James Tolleson was the exclusive agent for a Turner organization known as Koscot Interplanetary, Inc. and also a card-carrying member of a Turner organization known as Dare To Be Great.

E(16) The Tollesons ceased doing business with Century 2000 or selling Century 2000 memberships on or about February 14, 1973 and formed Exciting Life Travel and Success Club.

E(17) The Tollesons made the decision to split with Century 2000 and form Exciting Life several weeks before February 14, 1973, but the Tollesons and their agents failed to disclose the decision to members and prospective members of Century 2000 until February

14, 1973. After the decision to break with Century 2000 was made, the Tollesons continued to solicit memberships in Century 2000 without disclosing the decision.

E(18) The Tollesons and their agents failed to make all affirmative statements necessary to fully apprise prospective buyers of all the essential business conditions of Century 2000 and of the program offered.

E(19) Subsequent to November 10, 1973, the Tollesons and their agents held sales meetings for the purpose of selling executive memberships in Century 2000. At these meetings, false and misleading statements were made to prospective purchasers.

### DISCUSSION

No answer was filed to the petition for civil penalties involved in this case. The issue presented in this case is whether the Tollesons violated the provisions of the permanent injunction. If they violated the injunction, then they are liable for civil penalties under Section 8 of the Act, 73 P.S. §201-8, which reads as follows: "Any person who violates the terms of an injunction issued under section 4 of this act shall forfeit and pay to the Commonwealth, a civil penalty of not more than five thousand dollars ($5,000) for each violation. For the purposes of this section the court of common pleas [Commonwealth Court] issuing an injunction shall retain jurisdiction, and the cause shall be continued; and, in such cases, the Attorney General, acting in the name of the Commonwealth of Pennsylvania, may petition for recovery of civil penalties."

The permanent injunction of November 10, 1972 was agreed to by the Tollesons and presented to the Court for its approval. If the Tollesons have any complaint concerning the provisions of the permanent injunction, it is of their own making.

The burden is on the Commonwealth to prove that the Tollesons violated the provisions of the permanent injunction issued and filed by this Court on November 10, 1972. The Commonwealth has met that burden.

As the findings of fact disclose, the Tollesons and their agents carried out their sales program in such a manner as to obviously violate the permanent injunction. It is no more complicated than that. This case is stronger than the other petitions for civil penalties under docket number 207 C.D. 1973 for the reason that here, the Tollesons admit that the people who carried out the sales program were their employes, or rather the employes of the unregistered corporations or organizations owned and controlled by James Tolleson. Rodney Tolleson was James Tolleson's chief lieutenant and acted in concert with his brother. We believe it unnecessary in this opinion to describe in any great detail the operations of the Tollesons in their many sales programs, for all of this has been spelled out in the other opinions filed simultaneously herewith. Everything we said there is equally applicable here. All of the Tollesons' sales programs followed the pattern which they learned from their association with Glenn Turner's organization, Koscot, with very little amendment or change. The various inducement letters, the prepared scripts for the meetings, the use of shills and the exorbitant claims of profits and earnings, remained about the same. All of these sales tactics were designed by the Tollesons and their agents in order to confuse and mislead their prospects and to induce them to join a Tolleson organization. Membership fees were diverted from the organization which the prospect joined into Tolleson organizations without privy of contract to either the member or the organization joined. Falsehoods and misleading statements were designed solely for the purpose of making money for the Tollesons and were in violation of the Act.

CONCLUSIONS OF LAW

E(1) The Commonwealth, acting through its Attorney General, was a proper petitioner to bring an action for civil penalties under Section 8 of the Act, 73 P.S. §201-8.

E(2) The Tollesons, between November 1, 1972 and February 14, 1973, were doing business in the Commonwealth of Pennsylvania; and after November 10, 1972 were subject to the provisions of the permanent injunction issued and filed by this Court on that date.

E(3) All of the officers, directors, officials and sales personnel including by way of description and not by way of limitation, state developers, executive members and membership recruiters who sold or attempted to sell memberships, were agents of the Tollesons.

E(4) The Tollesons and their agents held meetings subsequent to November 10, 1972 for the purpose of selling executive meberships in Century 2000. These meetings were conducted in a manner which violated the permanent injunction issued and filed by this Court on November 10, 1972.

E(5) The Tollesons and their agents advised some prospective executive members in Century 2000 to utilize a mailing address in a trading area other than the trading area within which the prospective executive member actually lived. This advice violated the permanent injunction issued and filed by this Court on November 10, 1972.

E(6) The statements of the Tollesons and their agents that Century 2000 owned more than the two aircraft violated the permanent injunction issued and filed by this Court on November 10, 1972.

E(7) The unsupported and false statements made by the Tollesons and their agents concerning their wealth and amount of money they had earned in the Tolleson organizations violated the permanent injunction issued and filed by this Court November 10, 1972.

E(8)   The failure of the Tollesons and their agents to advise prospective executive members of Century 2000 of the required annual renewal fees was an unfair and deceptive act which violated the permanent injunction issued and filed by this Court on November 10, 1972.

E(9)   The Tollesons and their agents failed to provide the Attorney General's office with a current list of the names and addresses of Century 2000 executive members by the 1st and 15th of each month beginning on December 1, 1972.   The failure to so provide constituted a violation of the permanent injunction issued and filed by this Court November 10, 1972.

E(10)   The representation by the Tollesons and their agents that James Tolleson owned or controlled Century 2000 was an unfair and deceptive act in violation of the permanent injunction issued and filed by this Court November 10, 1972.

E(11)   The failure of the Tollesons and their agents to inform members and prospective members of Century 2000 of the decision to split with Century 2000 was an unfair and deceptive act in violation of the permanent injunction issued and filed by this Court on November 10, 1972.

E(12)   The improper and misleading displays of wealth by the Tollesons and their agents were in direct violation of the permanent injunction issued and filed by this Court on November 10, 1972.

E(13)   The failure of the Tollesons and their agents to make all affirmative statements necessary to fully apprise prospective buyers of all the essential business conditions of Century 2000 and the program offered was a direct violation of the permanent injunction issued and filed by this Court on November 10, 1972.

## SUMMARY

As a result of the findings of fact and conclusions of law set forth above, this Court must assess civil pen-

alties against the Tollesons. It is conceivable that each misrepresentation, each improperly conducted meeting and each failure to disclose information could be deemed to be a separate violation of the permanent injunction issued and filed November 10, 1972. However, this Court, exercising its judicial discretion, has determined that the civil penalties will be restricted to the ten general violations noted in the conclusions of law. Therefore, we

### ORDER

AND Now, this 19th day of June, 1974, after hearing and argument, and based upon the above findings, conclusions and holdings, and under the authority of Section 8 of the Act of December 17, 1968, P. L. 1224, 73 P.S. §201-8, James Tolleson and Rodney Tolleson (James E. Tolleson and Rodney W. Tolleson), jointly and severally, be and they hereby are directed and ordered to forfeit and pay over to the Commonwealth of Pennsylvania civil penalties in the total amount of $50,000 for the following violations of the permanent injunction of this Court dated November 10, 1972, for each of which specific violations is set forth the respective civil penalty:

1. For the meetings held subsequent to November 10, 1972 for the purpose of selling Executive Memberships in Century 2000, Inc. which were conducted in a manner which was in violation of the said permanent injunction, a civil penalty of $5,000.

2. For James Tolleson and Rodney Tolleson and their agents advising prospective Executive Members in Century 2000, Inc. to utilize a mailing address in a trading area other than the trading area within which the prospective member actually resided, in violation of the said permanent injunction, a civil penalty of $5,000.

3. For the fraudulent misrepresentations of James Tolleson and Rodney Tolleson and their agents that

Century 2000, Inc. owned more than two aircraft which was in violation of the said permanent injunction, a civil penalty of $5,000.

4. For the unsupported and false statements made by James Tolleson and Rodney Tolleson and their agents concerning their wealth and the amount of money which they had earned in the operation of the Tolleson organizations, a civil penalty of $5,000.

5. For the failure of James Tolleson and Rodney Tolleson and their agents to advise prospective Executive Members of Century 2000, Inc. of the annual renewal fees, a civil penalty of $5,000.

6. For the failure of James Tolleson and Rodney Tolleson to provide the Attorney General's office with a current list of names and addresses of Century 2000, Inc. Executive Members, a civil penalty of $5,000.

7. For the false and misleading statements made by James Tolleson and Rodney Tolleson and their agents that James Tolleson owned or controlled Century 2000, Inc., a civil penalty of $5,000.

8. For the failure of James Tolleson and Rodney Tolleson and their agents to inform members and prospective members of Century 2000, Inc. of their decision to cease doing business with Century 2000, Inc. between the time when the decision was made and February 14, 1973, a civil penalty of $5,000.

9. For the improper and misleading displays of wealth by James Tolleson and Rodney Tolleson and their agents to prospective members of Century 2000, Inc., a civil penalty of $5,000.

10. For the failure of James Tolleson and Rodney Tolleson and their agents to make all affirmative statements necessary to fully apprise prospective members of Century 2000, Inc. of all the essential business conditions of Century 2000, Inc. and of the programs offered by Century 2000, Inc., a civil penalty of $5,000.

It is further ordered that judgment be entered in favor of the Commonwealth of Pennsylvania and against James Tolleson and Rodney Tolleson jointly and severally in the total amount of the above civil penalties and that these civil penalties shall be paid to the Commonwealth of Pennsylvania through the Prothonotary of the Commonwealth Court of Pennsylvania within 60 days from the date hereof. All costs to be paid by James Tolleson and Rodney Tolleson, jointly and severally. This order shall become final unless exceptions are filed within 20 days from the date hereof.